596 A.2d 1099

MARGARET COLUCCI, PLAINTIFF, v. ROBERT J. COLUCCI, DEFENDANT.

Superior Court of New Jersey
Chancery Division Family Part
Essex County

March 28, 1991.

74

75

Michael K. Diamond, for plaintiff (Diamond, Afflitto & Raimondi, attorneys).

Robert C. Williams for defendant.

FUENTES, J.S.C.

In this case, the judgment of divorce provided, among other things, for sale of the marital premises upon the wife's remarriage, with the net proceeds being divided equally between husband and wife. Sometime after the divorce, the husband conveyed his interest in the property to his wife in partial satisfaction of a bankruptcy obligation. Thereafter the wife remarried.

The novel issue raised by the wife's remarriage is whether the husband may now compel the sale of the marital premises pursuant to the divorce judgment and share in the proceeds of the sale even though he has already transferred his interest in the property to satisfy bankruptcy debts. I conclude that absent a specific exception in the deed, the conveyance of a spouse's interest in the marital home to the other spouse is a conveyance of the entire estate and extinguishes any rights and benefits the grantor may have to that property under a judgment of divorce.

The facts are as follows. Margaret and Robert Colucci were married in October 1969. About two years after their marriage the Coluccis purchased real estate known as 4 Fairmont Terrace in West Orange for $31,500. They lived together in the marital home until 1981 when, after 12 years of marriage, Robert Colucci left his wife. Margaret Colucci continued to reside in the marital home with the couple's two children.

Sometime during this period Mr. Colucci was involved in a business venture which eventually failed. In June 1982, he filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. Jonathan Kohn was appointed trustee of the debtor's estate. Colucci was adjudicated a bankrupt and his debts were discharged in November 1982. In July 1983, Robert and Margaret Colucci ended their 14–year marriage in a divorce.

During the period of separation, which preceeded the divorce, the parties negotiated a property-settlement agreement. Paragraph seven of the agreement provided as follows:

> The wife and children of the marriage shall remain in the marital premises until the youngest child has become emancipated, the Wife remarries or the Wife has an unrelated male permanently residing in the premises, whichever shall occur sooner at which such time the premises would then be sold with the net proceeds being divided equally between the Husband and Wife.
>
> Until such time as the marital premises have been sold, Husband shall be responsible to pay in addition to the child support, the cost of the mortgage, tax and homeowners insurance premium on the marital premises.

The agreement acknowledged that the husband had filed a petition for personal bankruptcy. According to the husband, when the agreement was negotiated, he was under the impression that the marital home could not be used to satisfy his bankruptcy debts. It was with this understanding, he says, that he filed the bankruptcy petition.and that he agreed to be responsible for mortgage, taxes and insurance payments on the property. This claim is made although Colucci listed the home as an asset in schedule B–1 of his bankruptcy petition and estimated the value of his interest in the home at $35,000. He also listed an open mortgage on the property with a balance of $25,500. In June 1983, a month prior to the divorce, Kohn filed a complaint against Robert Colucci to sell the marital premises including the interest of the debtor's spouse. The trustee's complaint indicated that the marital home had an appraised fair market value of $82,100.

In order to prevent the loss of the home and displacement of the couple's children, Margaret Colucci negotiated a purchase of Robert's interest in the home with the bankruptcy trustee.

The credible evidence presented in support of the motion does not adequately establish whether the purchase price included a $7,500 waiver of the exemption to which the debtor spouse is entitled. 11 *U.S.C.A.* § 522(d)(1). Finally, in November 1984, Robert executed a deed conveying all his "rights, title and interest" in the property to Margaret for $100. At about the same time, Margaret paid the trustee $12,500 in exchange for the trustee's deed. In April 1990, Margaret Colucci remarried.

According to the Bankruptcy Code the estate of a debtor in bankruptcy is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 *U.S.C.A.* § 541(a)(1). The scope of this section of the code is broad and includes all property of the debtor whether tangible or intangible. *United States v. Whiting Pools, Inc.,* 462 *U.S.* 198, 205, 103 *S.Ct.* 2309, 2313, 76 *L.Ed.*2d 515 (1983). Real estate, whether wholly owned or in a tenancy by the entirety, is includable in the bankruptcy debtor's estate. *Newman v. Chase,* 70 *N.J.* 254, 262, 359 *A.*2d 474 (1976); *Lee v. Lee,* 180 *N.J.Super.* 90, 433 *A.*2d 824 (Ch.Div.1981); *Napotnik v. Equibank & Parkvale Sav. Ass'n.,* 679 *F.*2d 316, 318 (3 Cir.1982); *Chippenham Hosp. v. Bondurant,* 716 *F.*2d 1057, 1058 (4 Cir.1983). Clearly, the husband's interest in the marital premises in this case was a part of the bankrupt's estate and subject to sale by the trustee to satisfy his debts.

Robert Colucci's primary argument is that the conveyance of his interest in the marital home was for an amount well below the market value and was done in order to provide continuing shelter for his children. He claims that under the separation agreement, his obligation to pay the cost of the mortgage, tax and insurance was to terminate when the property was sold. The fact that he continued to pay these items after he transferred his interest in the property is evidence that the parties intended for him to retain an interest in the property. Thus, he now seeks enforcement of that portion of the agreement which entitles him to a forced sale of the premises and an equal division of the net proceeds.

In the first instance, the husband's contention that his interest in marital property was conveyed for less than the market value is not compelling. He asserts that his interest was estimated at about $35,000 but was sold for only $12,500. However, a spouse's interest in marital real estate subject to bankruptcy has considerably less value than the same property interest would have on the open market. When the husband filed his petition for bankruptcy, title to his share of the marital home vested in the trustee. 11 *U.S.C.A.* § 541(a). Under the Bankruptcy Code, the trustee has a responsibility to realize the maximum profit for the debtor's estate for distribution to creditors. *Commercial Credit Corp. v. Skutt,* 341 *F.*2d 177, 181 (8 Cir.1965); *De Pinto v. United States,* 407 *F.Supp.* 5, 7 (D.Ariz.1976). However, in regard to a marital residence, "there is a consistent philosophy that flows through the Bankruptcy Code that looks to preserve the marital home and the familial benefits of dependent children." *Matter of Hursa,* 87 *B.R.* 313, 321 (Bankr.D.N.J.1988).

Thus, before a trustee sells marital property, the debtor's spouse has a right to "purchase such property at the price at which such sale is to be consummated." 11 *U.S.C.A.* § 363(i). Additionally, in New Jersey, there may be no partition with respect to real estate held by spouses as tenants by the entirety. *Freda v. Commercial Trust Co.,* 118 *N.J.* 36, 570 *A.*2d 409 (1990); *Newman v. Chase, supra,* 70 *N.J.* at 260, 359 *A.*2d 474; *Dvorken v. Barrett,* 100 *N.J.Super.* 306, 309, 241 *A.*2d 841 (App.Div.1968), aff'd 53 *N.J.* 20, 247 *A.*2d 674 (1968). After a divorce a tenancy by the entirety is converted to a tenancy in common, which is subject to partition. *Freda v. Commercial Trust Co., supra,* 118 *N.J.* at 45, 570 *A.*2d 409; *Sisco v. New Jersey Bank,* 151 *N.J.Super.* 363, 367, 376 *A.*2d 1287 (Law Div.1977). However, it is within the equitable discretion of the court to deny partition or levy upon a marital residence held by tenants in common which would result in dispossessing the spouse and children of their home. *Newman v. Chase, supra* 70 *N.J.* at 266, 359 *A.*2d 474. This is particu-

larly true where a spouse's interest in the marital property was fairly allocated in accordance with equitable distribution guidelines. *Daeschler v. Daeschler,* 214 *N.J.Super.* 545, 556, 520 *A.*2d 777 (App.Div.1986); *Matter of Hursa, supra,* 87 *B.R.* at 321.

In effect, what a creditor or purchaser acquires in marital real estate at an execution sale or from a trustee in bankruptcy is no more than the debtor spouse's life interest in the marital home. The purchaser then becomes a tenant in common with the remaining spouse for the joint lives of husband and wife. *Newman v. Chase, supra* 70 *N.J.* at 261, 359 *A.*2d 474; *King v. Greene,* 30 *N.J.* 395, 412, 153 *A.*2d 49 (1959); *Silver Bay Homes v. Herrmann,* 128 *N.J.Super.* 114, 319 *A.*2d 243 (App.Div.1974); *Lee v. Lee, supra,* 180 *N.J.Super.* at 94, 433 *A.*2d 824. After a sale, "[w]hatever the nature of the 'fee' interest a purchaser receives, he can do nothing with it except wait and hope. What he buys is the chance that the non-debtor spouse will expire before the judgment debtor." *King v. Greene, supra* 30 *N.J.* at 414, 153 *A.*2d 49.

The court's reasoning in the case of *Lee v. Lee, supra* 180 *N.J.Super.* at 94, 433 *A.*2d 824, is pertinent here. Had someone other than Margaret Colucci purchased Robert's interest, that person would have been a tenant in common with the wife and would have acquired the husband's right of survivorship in the home. In that case, clearly Robert Colucci would have been divested of all his ownership interest in the marital home and he could not later claim a right to compel a sale and share in the proceeds. There is no reason to apply a different result here simply because the purchaser was the debtor's wife. In this context, the husband's claim of selling his interest in the property at below market value is unpersuasive. Once Robert Colucci filed a petition in bankruptcy, his interest in the marital premises became part of the debtor's estate. What was available for sale at that point was a life interest in the home, a speculative asset, of little economic value. *Freda v. Commercial Trust Co., supra,* 118 *N.J.* at 47, 570 *A.*2d 409; *Newman v.*

*Chase, supra,* 70 *N.J.* at 265, 359 *A.*2d 474; *Daeschler v. Daeschler, supra,* 214 *N.J.Super.* at 557, 520 *A.*2d 777.

■ Equally unpersuasive is the claim that the parties intended for the husband to retain an equitable interest in the marital premises after the conveyance. The prime consideration in determining the extent of a grant in a deed is the language of the conveyance examined in the light of the surrounding circumstances. *Baker v. Normanoch Ass'n., Inc.,* 25 *N.J.* 407, 417, 136 *A.*2d 645 (1957); *Hammett v. Rosensohn,* 26 *N.J.* 415, 423, 140 *A.*2d 377 (1958); *United States Trust Co. of New York v. State of New Jersey,* 226 *N.J.Super.* 8, 12, 543 *A.*2d 457 (App.Div.1988). A grantor's signature to a deed may be considered as evidence that the grantor read, understood and assented to the terms described in the instrument. *See, e.g., Fivey v. Pennsylvania R.R.,* 67 *N.J.L.* 627, 632, 52 *A.* 472 (E. & A.1902); *Periogt v. Steiker,* 18 *N.J.Super.* 134, 138, 86 *A.*2d 788 (App.Div.), certif. den. 9 *N.J.* 403, 88 *A.*2d 537 (1952).

Robert Colucci's deed to his wife, dated November 16, 1984, clearly described the property being conveyed as the marital home purchased by the couple in September of 1971. The deed included a provision that the instrument was being given "by the grantor, the husband of the grantee, to convey all of his right, title and interest in and to the subject." This phrase, which appears at the end of the property description and above the grantor's signature specifically incorporates the language of *N.J.S.A.* 46:3–13. That statute provides in pertinent part, "[e]very deed conveying lands shall, unless an exception be made therein, be construed to include all the estate, right, title, interest, use, possession, property, claim and demand whatsoever, both in law and equity...." Thus, in New Jersey, every deed conveys the entire estate of the grantor unless an exception is included in the document itself.

■ Where a deed purports to convey all rights, title and interest to real estate, the grantor retains no legal or equitable interest in the property and his rights to that property under

the judgment of divorce are extinguished. Thus, in the circumstances of this case, it is clear to me that when Robert Colucci gave his wife a deed conveying his interest in the marital home he retained no legal interest in the property and he may not now compel a sale of the marital home as provided in the judgment of divorce.

Robert Colucci also makes a request for equitable relief. He asserts that, when he transferred his property interest in bankruptcy, his obligation to make mortgage, tax and insurance payments on the property terminated. His equitable position, he says, stems from his payment of these items for nearly seven years after the bankruptcy sale of his interest. This, he claims, entitles him to an equitable interest in the house which should be remedied by a forced sale and equitable distribution of the sale proceeds. Support for this claim can be found in *Untermann v. Untermann*, 19 *N.J.* 507, 518, 117 *A.*2d 599 (1955), which states that the principles of equitable relief "arise and stem from facts which call for relief from the strict legal effects of a given situation." *See Carr v. Carr*, 120 *N.J.* 336, 351, 576 *A.*2d 872 (1990).

Generally, provisions in a property settlement agreement which require a spouse to pay a mortgage, taxes and insurance are viewed as support obligations. *Loyko v. Loyko*, 200 *N.J.Super.* 152, 157, 490 *A.*2d 802 (App.Div.1985); *Stein v. Fellerman*, 144 *N.J.Super.* 444, 450, 365 *A.*2d 1382 (App.Div. 1976). These are items which a court may order at any time before or after a judgment of divorce "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just...." *N.J.S.A.* 2A:34–23. An obligation "to maintain and support a family usually includes the obligation to keep a roof over their heads." *Poolman v. Poolman*, 289 *F.*2d 332, 335 (8 Cir.1961). The fact that the obligation terminates on the death or remarriage of the recipient spouse and is payable in installments over a substantial period of time, indicates that the obligation is for support, rather than part of a property

settlement. *Stein v. Fellerman, supra* 144 *N.J.Super.* at 449–450, 365 *A.*2d 1382; *Poolman v. Poolman, supra; In re Fox,* 5 *B.R.* 317 (Bankr.D.Tex 1980). This is particularly true where the obligation is to continue until the youngest child is emancipated or where the support obligation "has the effect of providing the support necessary to insure the daily needs of the former spouse and any children of the marriage." *Loyko v. Loyko, supra* 200 *N.J.Super.* at 157, 490 *A.*2d 802.

In this case, the payment obligation was to continue until, among other things, the emancipation of the youngest child or the wife's remarriage. The payments were made monthly and had the effect of providing shelter for the former spouse and the children of the marriage. Additionally, in his certification, Robert Colucci stated that he agreed to pay the housing expenses because he did not want his children "uprooted."

These factors lead me to conclude that the obligation to pay the mortgage, taxes and insurance for the marital home was a support obligation which survived the husband's bankruptcy and had to continue "until such time" as the premises were sold. The sale was to have been triggered by one of three events: (1) emancipation of the youngest child; (2) the wife's remarriage; or (3) the wife having an unrelated male permanently residing in the premises. The phrase "until such time" here means that Robert Colucci was to make the required payments until the occurrence of one of the three specified events. A bankruptcy estate sale, although specifically contemplated by the judgment of divorce, was not one of the sale-triggering conditions. None of the specified events occurred until June 7, 1990, when the wife remarried. Therefore, I find that the husband's mortgage, tax and insurance payments under the judgment of divorce were not payments designed to preserve an interest in the marital property but rather constituted a court ordered support obligation. The transfer of the husband's interest in the marital home during the bankruptcy

proceeding was not a sale under any of the three conditions set forth in the property-settlement agreement and therefore he could not validly terminate his support obligation until the wife's remarriage. An equity interest in marital real estate is not created simply by continued payments of one's support obligation.

■ I make one final observation on the nature of the conveyance in this case. *N.J.S.A.* 46:3-13 specifically provides that a conveyance of land, will ordinarily extinguish the grantor's rights to that property "both in law and equity." The phrase "law and equity" under this statute should be taken to mean that where the grantor conveys "all his right, title and interest" to property he retains no interest to that property whether legal or by application of equitable principles. Thus, under this provision, an equitable interest in real estate is not available to a grantor unless he or she specifically reserves that interest in the deed itself. The requirement that all legal and equitable exceptions to a conveyance be specifically set forth in the deed permits prospective purchasers to rely on the recorded document with confidence. *Mitchell v. D'Olier*, 68 *N.J.L.* 375, 384, 53 *A.* 467 (1902); *Solomon v. Canter*, 113 *N.J.Eq.* 43, 45, 166 *A.* 158 (E. & A.1933); *Howard Savings Bank v. Brunson*, 244 *N.J.Super.* 571, 575, 582 *A.*2d 1305 (Ch.Div.1990) (citing Jones, "The New Jersey Recording Act—A Study of its Policy," 12 *Rutgers L.Rev.* 328, 329-330 (1957)).

For these reasons defendant's motion to compel a sale of the marital premises and to an equal distribution of the proceeds is denied.